UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
SG EQUIPMENT FINANCE USA CORP.,                    Case No. 1:09-CV-7167-LTS

Plaintiff,

- against -

DEMITRI NIKITIN a/k/a DMITRI NIKITIN a/k/a
DIMITRI NIKITIN and FONON TECHNOLOGY
INTERNATIONAL, INC.,

Defendants.
-------------------------------------------------------------------x



        Plaintiff, SG Equipment Finance USA Corp. ("SGEF"), by and through its undersigned

counsel, The Tsang Law Firm, P.C., as and for its Complaint against the Defendants herein,

respectfully alleges as follows:

## The Parties

        1.      Plaintiff SGEF is a corporation duly authorized and existing pursuant to the laws

of the State of Delaware, with its principal place of business in Jersey City, New Jersey, and is

authorized to do business in the State of New York.

        2.      Upon information and belief, defendant Demitri Nikitin a/k/a Dmitri Nikitin a/k/a

Dimitri Nikitin ("Nikitin") is an individual who resides at 3217 Yattika Pl., Longwood, Florida

32779.

        3.      Upon information and belief, defendant Fonon Technology International, Inc.

("FTI") is a Nevada corporation having its principal place of business at 400 Rinehart Road,

Lake Mary, Florida 32746.

        4.      Upon information and belief, Nikitin is the principal of FTI.

1

## Jurisdiction and Venue

5.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. 1332(a)(1) in that there is diversity of citizenship between Plaintiff and the Defendants and this is a civil action wherein the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

6.     Venue is proper in this Court pursuant to 28 U.S.C. 1391(a) because a substantial part of the events giving rise to the claims occurred in this judicial district.

## Allegations Commons to All Causes of Action

### A.    The Master Lease Agreement

7.     On or about March 6, 2009, SGEF and non-party Laser Photonics, LLC ("Laser Photonics") entered into a Master Lease Agreement (the "Lease"), which Lease sets forth the terms and conditions by which SGEF would lease to Laser Photonics certain commercial laser equipment (the "Equipment"). A true and correct copy of the Lease is annexed hereto as Exhibit "A" and is incorporated by reference as though fully set forth herein.

8.     Pursuant to the terms and conditions of the Lease, Laser Photonics agreed to pay 60 lease installment payments of $11,875.35 for a total of $712,521.00, plus tax.

9.     In addition to setting forth in clear and unambiguous terms Laser Photonics's obligations under the Lease, the Lease also describes events constituting events of default thereunder, which include:

> a.     Lessee shall fail to make any Lease Payment, or any other payment under any Lease, as it becomes due and such failure is not cured within ten (10) days;
>
> b.     Lessee or any guarantor of Lessee's obligations hereunder ("Guarantor") shall commence any action . . . seeking appointment of a receiver, custodian or other similar official for it or for its

2

Assets or making a general assignment for the benefit of its creditors ...

10.     The Lease provides that upon the occurrence of any event of default, SGEF is entitled to declare the entire unpaid balance of lease payments, interest, and other sums due thereunder, immediately due and payable.

11.     In or about June 2009, Laser Photonics defaulted under the terms and conditions of the Lease by having failed to remit payments due under the Lease for June 2009 and each month thereafter.

12.     In addition, on or about June 9, 2009, Laser Photonics defaulted under the terms and conditions of the Lease by having, among other things, filed a Notice of Assignment for the Benefit of Creditors in the Circuit Court of the Eighteenth Judicial Circuit in Seminole County, Florida, under Case No. 09-CA-4791-16-G.

13.     Similarly, FTI, as the guarantor of Laser Photonics's obligations under the Lease, also filed on or about June 9, 2009, a Notice of Assignment for the Benefit of Creditors in the Circuit Court of the Eighteenth Judicial Circuit in Seminole County, Florida, under Case No. 09-CA-4793-16-L.

14.     Pursuant to the express terms of the Lease, Laser Photonics's failure to remit a lease payment when due, and each of the filings by Laser Photonics and its guarantor, FTI, constitute an event of default.

15.     SGEF has performed all conditions, covenants and promises required of it under the terms and conditions of the Lease.

## AS AND FOR A FIRST CAUSE OF ACTION

16.     SGEF repeats and realleges each of the foregoing paragraphs as though fully set forth herein.

3

**The Personal Guaranty**

17.     On or about March 6, 2009, Nikitin executed and delivered to SGEF a Personal

Guaranty (the "Nikitin Guaranty"), a true and accurate copy of which is annexed hereto as

Exhibit "B" and is incorporated by reference as though fully set forth herein.

18.     Nikitin entered into the Nikitin Guaranty to induce SGEF to accept and enter into

the Lease and all schedules thereto which were executed and entered into with Laser Photonics.

Pursuant to the Nikitin Guaranty, Nikitin guaranteed the prompt payment of all indebtedness and

obligations or every kind and nature owing by Laser Photonics to SGEF.

19.     Further, Nikitin guaranteed to SGEF:

> the prompt payment and/or performance of all indebtedness, obligations
> and liabilities of [Laser Photonics] at any time owing to [SGEF], whether
> now existing or hereafter arising, direct or indirect, matured or unmatured,
> primary or secondary, certain or contingent, or acquired by or otherwise
> created in favor of [SGEF], including without limitation any and all rent,
> loan, purchase or other installment payments, principal balances, taxes,
> indemnities, liquidated damages, accelerated amounts, return deficiency
> charges, casualty value payments, all interest, late charges and fees,
> attorneys' fees or enforcement and other costs, which may at any time be
> payable to [SGEF], together with all claims for damages arising from or in
> connection with the failure to punctually and completely pay or perform
> such obligations, whether or not such obligations are from time to time
> reduced or extinguished and thereafter increased or incurred (collectively
> the "Obligations").

20.     What is more, Nikitin agreed to pay all of the foregoing amounts and to perform

all the foregoing obligations irrespective of whether Laser Photonics's obligations could be

enforced against Laser Photonics because Nikitin's liability is "absolute and unconditional."

21.     On or about June 17, 2009, SGEF served a notice of default on Nikitin demanding

the immediate payment of all amounts due and owing by him under the Nikitin Guaranty.  A true

and correct copy of such notice is annexed hereto as Exhibit "C."

4

22.    Despite such notice, Nikitin has failed and refused to comply with his obligations under the Nikitin Guaranty.

23.    By reason of such breach, Nikitin is obligated to SGEF in an amount of no less than $665,019.60, plus interest at the default rate of 18% per annum, plus late charges, taxes, attorney's fees, cost, disbursements and all other amounts due under the Nikitin Guaranty.

24.    SGEF has performed all conditions, covenants and promises required of it under the terms and conditions of the Nikitin Guaranty.

## AS AND FOR A SECOND CAUSE OF ACTION

25.    SGEF repeats and realleges each of the foregoing paragraphs as though fully set forth herein.

### The Guaranty of Fonon Technology International, Inc.

26.    On or about March 6, 2009, defendant Fonon Technology International, Inc. ("FTI") executed and delivered to SGEF a Guaranty (the "Corporate Guaranty"), a true and accurate copy of which is annexed hereto as Exhibit "D" and is incorporated by reference as though fully set forth herein.

27.    FTI entered into the Corporate Guaranty to induce SGEF to accept and enter into the Lease and all schedules thereto which were executed and entered into with Laser Photonics. Pursuant to the Corporate Guaranty, FTI guaranteed the prompt payment of all indebtedness and obligations or every kind and nature owing by Laser Photonics to SGEF.

28.    Pursuant to the Corporate Guaranty, FTI guaranteed to SGEF:

> the prompt payment and/or performance of all indebtedness, obligations and liabilities of [Laser Photonics] at any time owing to [SGEF], whether now existing or hereafter arising, direct or indirect, matured or unmatured, primary or secondary, certain or contingent, or acquired by or otherwise created in favor of [SGEF], including without limitation any and all rent, loan, purchase or other installment payments, principal balances, taxes,

5

indemnities, liquidated damages, accelerated amounts, return deficiency charges, casualty value payments, all interest, late charges and fees, attorneys' fees or enforcement and other costs, which may at any time be payable to [SGEF], together with all claims for damages arising from or in connection with the failure to punctually and completely pay or perform such obligations, whether or not such obligations are from time to time reduced or extinguished and thereafter increased or incurred (collectively the "Obligations").

29.     FTI also agreed to pay all of the foregoing amounts and to perform all the foregoing obligations irrespective of whether Laser Photonics's obligations could be enforced against Laser Photonics because FTI's liability is "absolute and unconditional."

30.     On or about June 17, 2009, SGEF served a notice of default on FTI demanding the immediate payment of all amounts due and owing it under the Corporate Guaranty. A true and correct copy of such notice is annexed hereto as Exhibit "E."

31.     Despite such notice, FTI has failed and refused to comply with its obligations under the Corporate Guaranty.

32.     By reason of the foregoing, FTI is obligated to SGEF in an amount of no less than $665,019.60, plus interest at the default rate of 18% per annum, plus late charges, taxes, attorney's fees, cost, disbursements and all other amounts due under the Corporate Guaranty.

33.     SGEF has performed all conditions, covenants and promises required of it under the terms and conditions of the Corporate Guaranty.

**WHEREFORE**, SG Equipment Finance USA Corp. demands judgment against the

Defendants as follows:

(i)     On its First Cause of Action against Nikitin, awarding SG Equipment Finance

        USA Corp. the sum of no less than $665,019.60 with interest at the default rate of

        18% per annum from June 1, 2009, together with attorney's fees, costs,

        disbursements and all other amounts due under the Niktin Guaranty;

(ii)    On its Second Cause of Action against FTI, awarding SG Equipment Finance

        USA Corp. the sum of no less than $665,019.60 with interest at the default rate of

        18% per annum from June 1, 2009, together with attorney's fees, costs,

        disbursements and all other amounts due under the Corporate Guaranty; and

(iii)   Such other and further relief as this Court deems just and proper.


Dated: New York, New York
       September 8, 2009

                              THE TSANG LAW FIRM, P.C.
                              Attorneys for Plaintiff
                              SG Equipment Finance USA Corp.



                              Michael Tsang (MT 2836)
                              14 Wall Street, 22nd Floor
                              New York, NY 10005
                              Tel:  (212) 227-2246

# EXHIBIT A

# SG
## Equipment Finance    MASTER LEASE AGREEMENT

This MASTER LEASE AGREEMENT ("Agreement") is dated as of March 6, 2009, and is by and between SG Equipment Finance USA Corp., with offices located at 480 Washington Boulevard, 24th floor, Jersey City, NJ 07310, its successors and assigns ("Lessor") and Laser Photonics, LLC, a limited liability company having chief executive offices located at 400 Rinehart Road, Lake Mary, FL 32746 ("Lessee"). Lessee is organized under the laws of the state of Florida and has the following organizational ID#: L02099911231. The parties hereto for good and valuable consideration and intending to be legally bound hereby agree as follows:

**1. LEASE.** This Agreement establishes the general terms and conditions under which Lessor may, from time to time, lease Equipment (as hereinafter defined) to Lessee. The terms hereof shall be deemed to form a part of each Master Lease Schedule (each a "Lease") executed by the parties which references this Agreement. Items of "Equipment," "Licensed Materials," "Project Costs" and/or "Maintenance" shall be as identified in each Lease and, together with all other property described therein and all substitutions, replacements, parts, additions and accessories thereto shall be collectively referred to as the "Equipment." Lessee hereby requests Lessor to purchase the Equipment from the supplier(s) thereof (hereinafter called "Vendor") and to lease the Equipment to Lessee on the terms and conditions contained herein. Each Lease shall constitute a separate lease agreement incorporating all the terms hereof. In the event of a conflict between the provisions of any Lease and the provisions hereof, the provisions of the Lease shall prevail.

**2. LEASE TERM AND PAYMENTS.** This Agreement and each Lease shall become binding on Lessee upon its execution thereof and on Lessor upon its execution and/or acceptance thereof at its corporate offices. This Agreement shall remain effective at least until the expiration of the term of the last Lease hereunder. The term of each Lease shall commence on the "Commencement Date," as defined in the Lease with an interim term and "Base Term Commencement Date" as set forth therein and shall thereafter continue until all obligations of the Lessee under the Lease have been fully performed ("Lease Term"). The amount of the Lease Payments on each Lease ("Lease Payments") are based upon the estimated total cost of the Equipment on the applicable Lease. The Lease Payments shall be adjusted proportionably upward or downward if the actual total cost of the Equipment on the applicable Lease exceeds or is less than the estimate, with such adjustment being confirmed in writing. Interim Rent and Base Term Rent shall be due and payable as set forth in the Lease. All payments made by or on behalf of Lessee hereunder shall be nonrefundable. LESSEE'S OBLIGATION TO PAY SUCH LEASE PAYMENTS SHALL BE ABSOLUTE AND UNCONDITIONAL AND IS NOT SUBJECT TO ANY ABATEMENT, SET-OFF, DEFENSE OR COUNTERCLAIM FOR ANY REASON WHATSOEVER. All payments by Lessee shall be made to Lessor at its address specified above (or such other place as Lessor, in writing, directs) without notice or demand therefor. If the term of a Lease is extended, "Lease Term" shall be deemed to refer to all extensions thereof.

Whenever any payment is not made by Lessee within five (5) days of when due, Lessee agrees to pay to Lessor, not later than one month thereafter, an amount equal to the lesser of five percent (5%) of such delayed payment or the maximum amount permitted by applicable law as compensation for Lessor's internal operating expenses arising as a result of such delayed payment. Such amount shall be payable in addition to all amounts payable by Lessee as a result of the exercise of any of the remedies herein provided. Lessee agrees to pay Lessor $25.00 for each check by phone payment and $35.00 for each returned check.

**3. DELIVERY AND ACCEPTANCE.** As between Lessee and Lessor, delivery and installation arrangements and costs are the sole responsibility of Lessee. Lessee agrees to accept the Equipment when delivered, installed and operating to Vendor's specifications and to execute the Delivery and Acceptance Certificate supplied by Lessor as evidence thereof. Lessee agrees to hold Lessor harmless from specific performance of this Agreement and/or any Lease and from damages, if for any reason, the Vendor fails to deliver, or delays in delivery of, the Equipment so ordered or if the Equipment is unsatisfactory for any reason whatsoever. Lessee's execution of the Delivery and Acceptance Certificate shall conclusively establish that the Equipment covered thereby is acceptable to Lessee for all purposes of the Lease related thereto. If Lessee cancels or terminates a Lease prior to the Commencement Date or if Lessee fails or refuses to sign the Delivery and Acceptance Certificate within a reasonable time, not to exceed five (5) business days, after the Equipment has been delivered, installed and is operating to Vendor's specifications, Lessor shall have the option of treating the Lease as cancelled by Lessee and Lessee shall automatically assume all of Lessor's rights and obligations as purchaser of the Equipment, whether under an Acquisition Agreement or otherwise. If Lessee has

entered into any lease, licensing, maintenance or similar agreements with the Vendor (each an "Acquisition Agreement") covering the Equipment or any portion thereof, Lessee transfers and assigns to Lessor all of Lessee's rights, but none of its obligations (except for Lessee's obligation to pay for the Equipment, to the extent approved by Lessor, upon Lessor's acceptance of the Lease), with respect to the Acquisition Agreement, including without limitation the right to take title to the Equipment. Lessee authorizes Lessor to fill in or correct the Commencement Date, Base Term Commencement Date, due dates, serial numbers, VIN numbers and other information which becomes available to Lessor during the term of a Lease.

**4. SELECTION OF EQUIPMENT AND DISCLAIMER OF WARRANTY.** If the Equipment is not properly installed, does not operate as represented or warranted by the Vendor, or is unsatisfactory for any reason, Lessee shall make any claim on account thereof solely against the Vendor and shall, nevertheless, pay Lessor all Lease Payments under the Lease and shall not set up against Lessee's obligations any such claims as a defense, counterclaim, set-off or otherwise. So long as Lessee is not in breach or default of this Agreement or any Lease hereunder, Lessor hereby assigns to Lessee any rights which Lessee may have against the Vendor for breach of warranty or other representation respecting any item of the Equipment. All proceeds of any warranty recovery by Lessee from the Vendor of any item of the Equipment shall first be used to repair or replace the affected item. NOTWITHSTANDING ANY PROVISION CONTAINED HEREIN TO THE CONTRARY, LESSEE DOES NOT WAIVE ANY RIGHTS OR REMEDIES IT MAY HAVE AGAINST THE VENDOR OF THE EQUIPMENT.

Lessee has selected both the Equipment and the Vendor from whom Lessor covenants to purchase the Equipment at Lessee's request. LESSEE ACKNOWLEDGES THAT LESSOR HAS NO EXPERTISE OR SPECIAL FAMILIARITY ABOUT OR WITH RESPECT TO THE EQUIPMENT. LESSEE AGREES THAT THE EQUIPMENT IS LEASED "AS-IS" AND IS OF A SIZE, DESIGN AND CAPACITY SELECTED BY LESSEE AND THAT LESSEE IS SATISFIED THAT THE SAME IS SUITABLE FOR LESSEE'S PURPOSES, AND THAT LESSOR HAS MADE NO REPRESENTATION OR WARRANTY WITH RESPECT TO THE SUITABILITY OR DURABILITY OF SAID EQUIPMENT FOR THE PURPOSES AND USES OF LESSEE, OR ANY OTHER REPRESENTATION OR WARRANTY, EXPRESS OR IMPLIED, WITH RESPECT THERETO, INCLUDING THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE. LESSOR FURTHER DISCLAIMS ANY LIABILITY FOR LOSS, DAMAGE OR INJURY TO LESSEE OR THIRD PARTIES AS A RESULT OF ANY DEFECTS LATENT OR OTHERWISE, IN THE EQUIPMENT WHETHER ARISING FROM THE APPLICATION OF THE LAWS OF STRICT LIABILITY OR OTHERWISE.

LESSEE ACKNOWLEDGES THAT NEITHER THE VENDOR NOR ANY SALESPERSON, EMPLOYEE, REPRESENTATIVE OR AGENT OF THE VENDOR IS AN AGENT OR REPRESENTATIVE OF LESSOR, AND THAT NONE OF THE ABOVE IS AUTHORIZED TO WAIVE OR ALTER ANY TERM, PROVISION OR CONDITION OF THIS AGREEMENT OR ANY LEASE, OR MAKE ANY REPRESENTATION OR WARRANTY WITH RESPECT TO THIS AGREEMENT, ANY LEASE OR THE EQUIPMENT LEASED THEREUNDER. REGARDLESS OF CAUSE, LESSEE WILL NOT ASSERT ANY CLAIM WHATSOEVER AGAINST LESSOR FOR LOSS OF ANTICIPATORY PROFIT OR ANY OTHER INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES, NOR SHALL LESSOR BE RESPONSIBLE FOR ANY DAMAGES OR COSTS WHICH MAY BE ASSESSED AGAINST LESSEE IN ANY ACTION FOR INFRINGEMENT OF ANY PATENT, COPYRIGHT OR INTELLECTUAL PROPERTY RIGHTS. LESSOR MAKES NO WARRANTY AS TO THE TREATMENT OF THIS AGREEMENT OR ANY LEASE FOR TAX OR ACCOUNTING PURPOSES.

**5. TITLE, PERSONAL PROPERTY AND LOCATION.** The Equipment is, and shall at all times be and remain the sole and exclusive property of Lessor, and Lessee, notwithstanding any trade-in or down payment made by Lessee or on behalf with respect to the Equipment, shall have no right, title or interest therein thereto, except as to the use thereof subject to the terms and conditions of this Agreement and the related Lease. Notwithstanding anything to the contrary, this Agreement or any Lease, neither this Agreement nor any Lease grants any right, title or interest in or to that portion of any Equipment constituting or containing software and/or operation manuals, plans, specifications and documentation related thereto (collectively, "Licensed Materials"). Any rights that Lessee may have with respect to Licensed Materials shall arise only pursuant to license agreements between Lessee and the licensor(s) of such Licensed Materials (collectively, the "Licensors") which license agreements ("Licenses") may be contained within the packaging associated with the Equipment. All title to and ownership of the Licensed Materials (together with all rights in patents, copyrights, trade secrets and other intellectual property related applicable thereto) are and shall remain in the Licensors during and after the term

3/11/2009

of the applicable Lease. Any use of the terms "sell," "purchase," "license," "lease," and the like in this Agreement or any Lease with respect to Licensed Materials shall be interpreted in accordance with this Section 5.

Lessee will not directly or indirectly create, incur, assume or suffer to exist any lien on or with respect to the Equipment or Lessor's interest thereto, except such liens as may arise through the independent acts or omissions of the Lessor. Lessee, at its own expense, will promptly pay, satisfy or otherwise take such actions as may be necessary to keep the Equipment free and clear of any and all such liens. The Equipment is, and at all times shall remain, personal property notwithstanding that the Equipment or any item thereof may now be, or hereafter become, in any manner affixed or attached to, or imbedded in, or permanently resting upon real property or any improvement thereof or attached in any manner to what is permanent. If requested by Lessor prior to or at any time during the Lease Term, Lessee will obtain and deliver to Lessor waivers of interest or liens in recordable form, satisfactory to Lessor, from all persons claiming any interest in the real property on which an item of the Equipment is installed or located.

The Equipment shall be kept at the address designated in the applicable Lease and shall not be removed therefrom without the prior written consent of the Lessor, which consent shall not be unreasonably withheld.

6.  USE; MAINTENANCE AND INSPECTION.  Lessee shall use the Equipment solely in the conduct of its business and in a careful and proper manner consistent with the requirements of all applicable insurance policies and shall permit only qualified personnel to operate the Equipment. Lessee will not modify the Equipment in any way without the prior written consent of Lessor, which consent shall not be unreasonably withheld.   Lessee shall not attach or incorporate the Equipment or Licensed Materials to or in any other item of equipment or software in such a manner that the Equipment or Licensed Materials becomes or may be deemed to have become an accession.  If any parts or accessories forming part of the Equipment become worn out, lost, destroyed, damaged beyond repair or otherwise permanently rendered unfit for use, Lessee, at its own expense, shall within a reasonable time cause such parts or accessories to be replaced by replacement parts or accessories which are free and clear of all liens, encumbrances or rights of others and have a utility at least equal to the parts or accessories replaced. All equipment, accessories, upgrades, parts and replacements for or which are added to or become attached to the Equipment, which are essential to the operation of the Equipment or which cannot be detached from the Equipment without materially interfering with the operation of the Equipment or adversely affecting the value and utility which the Equipment would have had without the addition thereof, shall immediately become the property of Lessor, and shall be deemed incorporated in the Equipment and subject to the terms of this Agreement and the related Lease as if originally leased hereunder.  Lessee shall not make any material alterations to the Equipment without the prior written consent of Lessor, which consent shall not be unreasonably withheld. Upon reasonable advance notice, Lessor shall have the right to inspect the Equipment and all maintenance records with respect thereto, if any, at any reasonable time during normal business hours.

At its own expense, Lessee will cause the Equipment to be kept, used and maintained as recommended by the Vendor and Vendor's maintenance manuals and plans by competent and duly qualified personnel in accordance with applicable governmental regulations, if any, and in as good operating condition as when delivered to Lessee hereunder, ordinary wear and tear resulting from proper use alone excepted.  In the event the Lease Payments include the cost of maintenance and/or service being provided by Vendor, Lessee acknowledges that Lessor is not responsible for providing any required maintenance and/or service for the Equipment. Lessee shall make all claims for service and/or maintenance solely to the Vendor and Lessee's obligation to make all required Lease Payments shall remain unconditional.

7.  ASSIGNMENT.   LESSEE MAY NOT ASSIGN THIS AGREEMENT, ANY LEASE OR THE RIGHTS HEREUNDER, NOR SHALL THE LESSEE SUBLEASE OR LEND THE EQUIPMENT OR PERMIT IT TO BE USED BY ANYONE OTHER THAN LESSEE'S EMPLOYEES WITHOUT THE PRIOR WRITTEN CONSENT OF LESSOR, WHICH CONSENT SHALL NOT BE UNREASONABLY WITHHELD.  Lessor may at any time assign all or part of any interest in this Agreement or any Lease and in each item of the Equipment and monies to become due to Lessor hereunder; and, Lessor may grant security interests in the Equipment, subject to the Lessee's rights therein.  In such events, all the provisions of this Agreement and/or any applicable Lease for the benefit of Lessor shall inure to the benefit of and be exercised by or on behalf of such assignee or transferee(an "Assignee"), but the Assignee shall not be liable for or be required to perform any of Lessor's obligations to Lessee.  The Lessor may direct that all Lease Payments due and to become due under this Agreement or any Lease hereunder and assigned by Lessor shall be paid directly to Assignee, upon notice of such assignment to Lessee. The right of the Assignee to the payment of the assigned Lease Payments, the performance of all Lessee's obligations and to exercise any other of Lessor's rights hereunder shall not be subject to any defense, counterclaim or set-off which the Lessee may have or assert against the Lessor, and the Lessee hereby agrees that it will not assert any such defenses, set-offs, counterclaims and claims against the Assignee.  No such assignment by

Lessor shall relieve Lessor of its obligations or limit or otherwise affect Lessee's rights and/or obligations hereunder or under any Lease.

8.  RETURN OF EQUIPMENT.  At the expiration or earlier termination of the Lease Term of a Lease, the Lessee shall, at its sole expense, surrender each item of the Equipment then subject to such Lease by providing the required notice to Lessor and delivering the item to the location designated by the Lessor within the Continental United States.  In the case of Licensed Materials, Lessee shall terminate its use of all Licensed Materials subject to the expiring or terminating Lease and assign to Lessor all of Lessee's rights under the applicable Licenses. Lessee shall arrange for the return shipment of the Equipment, including the Licensed Materials, and its insurance in transit in accordance with the Lessor's instructions and at the Lessee's sole expense.

When an item of the Licensed Materials or Equipment is surrendered to the Lessor it shall be in the condition and repair required to be maintained under this Agreement. It will also be free of all evidence of advertising or insignia placed on it by the Lessee, meet all legal and regulatory requirements and be free of all liens.  If Lessor reasonably determines that an item of Licensed Materials or Equipment, once it is returned, is not in the condition required hereby, Lessor may cause the repair, service, upgrade, modification or overhaul of the item of Licensed Materials or Equipment to achieve such condition and upon demand, Lessee shall promptly reimburse Lessor for all amounts reasonably expended in connection with the foregoing.  Upon request, Lessee shall certify in writing to Lessor that Lessee has ceased all use of the Licensed Materials.

Should Lessee not return the Equipment (or any portion thereof) at the end of the applicable Lease Term, or continue to use the Licensed Materials, Lessee shall continue to make Lease Payments to Lessor in the sum equal to the last Lease Payment and at the same intervals as set out in the Lease as a month-to-month lease term (or other term as designated by Lessor) until, with proper notice, the Equipment is returned by Lessee.  The acceptance of said Lease Payments by Lessor shall not waive Lessor's right to have the Equipment promptly returned to Lessor pursuant to the provisions hereof, nor shall the acceptance of said Lease Payments be deemed to be an extension of the Lease Term.

9.  RISK OF LOSS.  Lessee hereby assumes and shall bear the entire risk of loss (including theft, requisition of use, erasure or inoperability) or destruction of or damage to the Equipment from any and every cause whatsoever, whether or not insured, until the Equipment is returned to Lessor.  No such loss or damage shall relieve Lessee from any obligation under this Agreement or the applicable Lease, which shall continue in full force and effect.  In the event of damage to or loss or destruction of the Equipment (or any item thereof), Lessee shall promptly notify Lessor in writing of such fact and shall, at the option of Lessor, (a) place the Equipment in good repair, condition and working order, (b) replace the Equipment with like Equipment in good repair, condition and working order, acceptable to Lessor and transfer clear title to or a right to use, as appropriate, such replacement Equipment to Lessor, whereupon such Equipment shall be subject to the applicable Lease and be deemed the Equipment for purposes thereof, or (c) on the due date for the next Lease Payment or upon the expiration of such Lease, whichever first occurs, pay to Lessor: all amounts then due but unpaid, plus the present value of the total of all unpaid Lease Payments for the entire remaining Lease Term plus the estimated fair market value of the Equipment at the end of the originally scheduled Lease Term or the agreed upon purchase option price, if any, all of which shall be discounted to the date of payment by Lessee at an annual rate equal to the lesser of three percent (3%) or the rate then available for United States Treasury obligations having an average life equal to one half of the remaining Lease Term ("Present Value Rate"), plus all taxes, whereupon such Lease shall terminate with respect thereto (the "Stipulated Loss Value").

10.  INSURANCE.  Prior to the Lease Commencement Date, Lessee shall obtain, maintain and keep the Equipment insured against all risks of loss or damage, in an amount not less than the replacement cost or the Stipulated Loss Value of the Equipment, whichever is greater, without deductible and without co-insurance. Lessee shall maintain such insurance coverage for the entire Lease Term. Lessee shall also obtain and maintain for the entire Lease Term, comprehensive public liability insurance covering liability for bodily injury, including death, and property damage resulting from the purchase, ownership, leasing, maintenance, use, operation or return of the Equipment with a combined single limit of not less than Two Million Dollars ($2,000,000) per occurrence. All said insurance shall be in a form and an amount and with companies reasonably satisfactory to Lessor. Lessor, its successors or assigns, shall be the sole named loss payee with respect to insurance for damage to or loss of the Equipment and shall be named as an additional insured on the public liability insurance.  Lessee shall pay all premiums for such insurance and shall deliver to Lessor certificates of insurance, or other evidence satisfactory to Lessor evidencing the insurance required hereby, along with proof, satisfactory to Lessor, of the payment of the premiums for such insurance policies.  All insurance shall provide for at least thirty (30) days advance written notice to Lessor before any cancellation, expiration or material modification thereof and also provide that no act or default of any person other than Lessor, its agents or those claiming under Lessor, will affect Lessor's right to recover under such policy or policies in case of loss.  Lessee hereby irrevocably appoints Lessor as Lessee's attorney-in-fact (which power shall be deemed

coupled with an interest) to make claim for, receive payment of, and execute and endorse all documents, checks or drafts received in payment for loss or damage under any such insurance policy. Unless Lessee is in default, Lessee may with the prior written approval of Lessor, settle and adjust all such claims. Lessee agrees if Lessee shall fail to procure, maintain, and pay for such insurance, Lessor shall have the right, but not the obligation, to obtain such insurance on behalf of and at the expense of Lessee. In the event Lessor does obtain such insurance, Lessee agrees to pay all costs thereof and an administrative fee for Lessor with the next Lease Payment or as specified by Lessor. Alternatively, Lessor may forego acquiring insurance on Lessee's behalf and charge Lessee a monthly administrative fee for Lessor's costs in monitoring and administering such deficiency and Lessee shall remain liable for any damage to or caused by the Equipment.

**11. INDEMNIFICATION.** Lessee assumes and agrees to indemnify, defend and keep harmless Lessor, its agents and employees, from and against any and all losses, damages, injuries, claims, demands and expenses, including legal, consulting and expert expenses (other than such as may directly and proximately result from the gross negligence or willful misconduct of Lessor, its agents or employees), arising on account of the ordering (whether by Acquisition Agreement or otherwise), acquisition, delivery, installation or rejection of the Equipment, the possession, maintenance, use, manufacture, condition (including without limitation, latent and other defects, any claim in tort for strict liability, and any claim for patent, trademark or copyright infringement) or operation of any item of the Equipment, and by whomsoever used or operated, during the Lease Term with respect to that item of the Equipment, the loss, damage, destruction, environmental impact, removal, return, surrender, sale or other disposition of the Equipment, or any item thereof. Lessor shall give Lessee notice of any claim or liability hereby indemnified against. The obligations contained in this paragraph continue beyond the termination of the applicable Lease if the liability occurred during the Lease Term.

**12. EVENTS OF DEFAULT.** The term "Event of Default" shall mean any one or more of the following:

(a) Lessee shall fail to make any Lease Payment, or any other payment under any Lease, as it becomes due and such failure is not cured within ten (10) days; or (b) Lessee shall fail to perform or observe any of the covenants set forth in Paragraph 10; or (c) Lessee shall fail to perform or observe any other covenant, condition or agreement to be performed or observed by it hereunder or in any Lease and such failure is not cured within 30 days after the date of notice thereof by Lessor to Lessee; or (d) Lessee shall enter into any transaction of merger or consolidation in which it is not the surviving entity or sell, transfer or otherwise dispose of all or substantially all of its assets ("Assets") unless the surviving entity or the entity acquiring such Assets assumes all the duties and obligations of Lessee hereunder and which merger, consolidation, sale or transfer must be approved in writing by Lessor; or (e) (i) Lessee or any guarantor of Lessee's obligations hereunder ("Guarantor") shall commence any action (A) for relief under any existing or future law of any jurisdiction, domestic or foreign, relating to bankruptcy, insolvency, reorganization or relief of debtors, or (B) seeking appointment of a receiver, custodian or other similar official for it or for its Assets or making a general assignment for the benefit of its creditors; or (ii) there shall be commenced against Lessee any action (A) of a nature referred to in clause (i) which results in the entry of an order for relief or any such other relief and remains undismissed or undischarged for a period of 30 days, or (B) seeking attachment, execution or similar process against its assets which results in the entry of an order for any such relief which shall not be vacated or discharged within 30 days from the entry thereof; or (iii) Lessee shall generally not, or be unable to, pay its debts as they come due; or (f) Lessee or any Guarantor shall die or (if an entity) liquidate or dissolve itself or be liquidated or terminated; or (g) any representation or warranty made by Lessee herein or otherwise furnished Lessor in connection with this Agreement or any Lease hereunder shall prove at any time to have been untrue or misleading in any material respect; or (h) Lessee or any Guarantor defaults on any indebtedness for borrowed money, lease, or installment sale obligation to Lessor or any affiliate of Lessor when any applicable grace period for such obligation has expired; or (i) Lessee or any Guarantor defaults on any indebtedness for borrowed money, lease, or installment sale obligation, in each case when any applicable grace period for such obligation has expired and the lender, lessor or creditor has commenced to exercise any remedy, but only if the indebtedness or other obligation is in an amount equal to or in excess of $50,000; or (j) Lessor shall reasonably deem itself insecure as a result of a material adverse change in Lessee's financial condition, operations or ownership; or (k) Lessee shall default in its obligations under a License.

**13. REMEDIES.** Upon the occurrence of any Event of Default, Lessor may declare this Agreement and/or any Lease hereunder to be in default and exercise any one or more of the following remedies:

(a) declare the entire unpaid balance of Lease Payments for the unexpired term of the Lease immediately due and payable and similarly accelerate the balances due under any other Leases without notice or demand, (b) sue for and recover the Stipulated Loss Value, as defined in Section 9 hereof, for each

accelerated Lease, but only to the extent permitted by law, (c) charge Lessee interest on all monies more than thirty days past due at the lesser of one and one half percent (1.5%) per month or the maximum rate permitted by law from the date of default until paid, (d) require Lessee to assemble all Equipment at Lessee's expense, at a place reasonably designated by Lessor and/or (e) remove any physical obstructions for removal of the Equipment from the place where the Equipment is located and take possession of any or all items of Equipment, without demand or notice, wherever same may be located, disconnecting and separating all such items of the Equipment from any other property. Lessee hereby waives any and all damages occasioned by such retaking except such damages as may be caused by Lessor's gross negligence or willful misconduct. Lessor may, at its option, use, ship, store or repair any or all items of the Equipment so removed and shall sell, lease or otherwise dispose of any such Equipment at a private or public sale. In the event Lessor disposes of the Equipment, Lessor shall give Lessee credit for any sums received by Lessor from the sale or lease of the Equipment after deduction of the expenses of sale or lease. Lessee shall also be liable for and shall pay to Lessor (i) all expenses incurred by Lessor in connection with the enforcement of any of Lessor's remedies, including all expenses of repossessing, storing, shipping, repairing and selling the Equipment, and (ii) Lessor's reasonable attorney's fees and expenses. Lessor and Lessee agree that the provisions of this paragraph represent an agreed measure of damages and are not to be deemed a forfeiture or penalty.

All remedies of Lessor hereunder are cumulative, are in addition to any other remedies provided for by law, and may, to the extent permitted by law, be exercised concurrently or separately. The exercise of any one remedy shall not be deemed to be an election of such remedy or to preclude the exercise of any other remedy. No failure on the part of the Lessor to exercise and no delay in exercising any right or remedy shall operate as a waiver thereof or modify the terms of this Agreement or any Lease hereunder. A waiver of default shall not be a waiver of any other or subsequent default. Lessor's recovery hereunder shall in no event exceed the maximum recovery permitted by law. Notwithstanding any provision contained herein to the contrary, the termination or cancellation of a Lease shall not affect Lessee's duty to perform Lessee's obligations under such Lease to Lessor in full.

**14. LAWS, REGULATIONS AND TAXES.** Lessee shall comply with all laws, regulations and orders relating or pertaining to the Equipment, this Agreement and/or any Lease and Lessee shall be responsible for, as and when due, and shall indemnify and hold Lessor harmless from and against all present and future taxes and other governmental charges (including, without limitation, sales, use, property, leasing and stamp taxes and license and registration fees) and amounts in lieu of such taxes and charges and any penalties or interest on any of the foregoing, imposed, levied upon, in connection with, or as a result of the purchase, ownership, delivery, leasing, possession or use of the Equipment, or based upon or measured by the Lease Payments or receipts with respect to this Agreement or any Lease. Lessee shall not, however, be obligated to pay any taxes on or measured by Lessor's net income. Lessee authorizes Lessor to add to the amount of each Lease Payment any sales, use or leasing tax that may be imposed on or measured by such Lease Payment. For administrative purposes, unless otherwise directed in writing by Lessor, Lessee shall list itself as owner of the Equipment for property tax purposes, pay all such property taxes when due and if requested promptly provide Lessor with evidence of such compliance. In the event Lessee does not pay any of the sums specified above, Lessor has the right, but not the obligation, to pay the same. If Lessor shall so pay any of the aforementioned, then Lessee shall pay Lessor on demand, as additional rent, the amount of the tax, plus reasonable costs incurred in collecting and administering any taxes, assessments or fees and remitting them to the appropriate authorities. The obligations contained in this Section shall continue beyond the termination of the Lease if the obligation occurred during the Lease Term. If Lessor requires a site inspection to verify the condition and/or existence of the Equipment, or if Lessee requests administrative services (i.e., property tax research), Lessee agrees to reimburse Lessor's fees, costs and expenses as invoiced.

**15. FURTHER ASSURANCES, UCC FILINGS.** Lessee shall execute and deliver to Lessor upon Lessor's request such further and additional documents, instruments and assurances as Lessor deems necessary (a) to acknowledge and confirm, for the benefit of Lessor or any Assignee, all of the terms and conditions of all or any part of any Lease and Lessor's or Assignee's rights with respect thereto, and Lessee's compliance with all of the terms and provisions thereof and (b) to preserve, protect and perfect Lessor's or Assignee's right, title or interest in any Equipment and/or Collateral, including, without limitation, such Uniform Commercial Code ("UCC") financing statements or amendments, control agreements, corporate resolutions, certificates of compliance, notices of assignment or transfers of interests, and restatements and reaffirmations of Lessee's obligations and its representations and warranties with respect thereto as of the dates requested by Lessor from time to time. Lessee hereby irrevocably authorizes Lessor to file and record, and appoints Lessor as its attorney-in-fact to execute (if applicable), file and record, UCC financing statements, amendments thereto and other lien recordation documents with respect to the Equipment, ratifies such authorization and appointment with respect to any UCC financing statements or amendments thereto prior to the date of any Lease, and Lessee

agrees to pay or reimburse Lessor for any lien searches, filing, recording or stamp fees or taxes arising from or relating to any such filings. Lessee hereby covenants and agrees that it shall not file any corrective or termination statement with respect to any UCC financing statements recorded by or for the benefit of Lessor with respect to the Equipment without Lessor's prior written consent. Lessee agrees to pay Lessor a documentation fee equal to the amount specified in each Lease, or if not so specified, the greater of either $250.00 or 0.5% of the total of Equipment invoices to be funded by Lessor thereunder, which amount shall be invoiced and payable along with the first Lease Payment thereunder, to cover Lessor's expense in processing this Lease and perfecting Lessor's interest in the Equipment.

It is the intent of the parties that each Lease is a true lease, and the filing of a financing statement under the UCC or other applicable law shall not be construed as evidence that any security interest was intended to be created, but only to give public notice of Lessor's ownership of the Equipment. To secure the payment and performance in full of all of Lessee's obligations under all Leases and all of Lessee's other obligations to Lessor now existing or hereafter arising, Lessee hereby grants to Lessor a security interest in all items of Equipment subject to each Lease in which Lessee may now or hereafter have rights, and all parts, accessories, accessions and attachments thereto, and all replacements, substitutions and exchanges (including trade-ins) for such goods, together with proceeds of all of the foregoing, including proceeds in the form of goods, accounts, chattel paper, documents, instruments, general intangibles, investment property, deposit accounts, letter of credit rights and supporting obligations (the "Collateral").

**16.   LESSEE REPRESENTATIONS AND WARRANTIES.**   Lessee hereby represents, warrants and covenants to Lessor the following with respect to each Lease as of the date Lessee executes the Delivery and Acceptance Receipt related thereto: (a) Lessee is organized and validly existing under the laws of the state of its organization, with adequate power and capacity to enter into the Lease, all documents related to the purchase of the Equipment and any other documents required to be delivered in connection with the Lease or the Equipment (hereinafter "Documents") and is duly qualified to do business wherever necessary to carry on its present business, including all states where the Equipment is to be located, and Lessee will not change its form or state of organization without the prior written consent of Lessor, such consent not to be unreasonably withheld; (b) the Documents have been duly authorized, executed and delivered by Lessee and constitute valid, legal and binding agreements, enforceable in accordance with their terms, except as may be limited under applicable bankruptcy and insolvency laws; (c) no approval, consent or withholding of objections is required from any federal, state or local governmental authority or instrumentality with respect to the entry into or performance by Lessee of the Documents, except such as have already been obtained; (d) the entry into and performance by Lessee of its obligations under the Documents will not (i) violate any judgment, order, law or regulation applicable to Lessee or (ii) result in any breach of, constitute a default under or result in the creation of any lien, charge, security interest or other encumbrance upon any item of the Equipment pursuant to any indenture, mortgage, deed of trust, bank loan or credit agreement or other instrument (other than the Lease or any purchase money security interest retained by any supplier) to which Lessee is a party; (e) there are no suits or proceedings pending or threatened in court or before any regulatory commission, board or other administrative governmental agency against or affecting Lessee, which will have a material adverse effect on the ability of Lessee to fulfill its obligations under the Lease; and (f) the balance sheet and statement of income of Lessee, or of any consolidated group of which Lessee is a member, heretofore delivered to Lessor have been prepared in accordance with generally accepted accounting principles and fairly present the financial position of Lessee or the consolidated group of companies of which Lessee is a member on and as of the dates thereof and the results of its or their operations for the period or periods covered thereby. Since the date of the most current balance sheet and statement of income provided to Lessor, there has been no material adverse change in the financial or operating condition of Lessee or of its consolidated group. Lessee hereby warrants and represents that the Equipment will be used for business purposes, and not for personal, family or household purposes. Lessee acknowledges that Lessor has relied upon this representation in entering into this Agreement and each Lease.

**17.   NOTICES.**   Written notices to be given hereunder or any Lease shall be deemed to have been given when delivered personally or deposited in the United States mails or nationally recognized delivery service, postage prepaid, addressed to such party at its address set forth above or at such other address as such party may have subsequently provided in writing.

**18.   SUPPLIER'S CONTRACT AND LESSEE'S WAIVERS.**   Lessor and Lessee agree that each Lease is a Finance Lease as that term is defined in Article 2A of the UCC. Lessee acknowledges that Lessor has apprised Lessee of the identity of the Equipment supplier. Lessor hereby notifies Lessee that Lessee may have rights pursuant to the contract with the supplier and the Lessee may contact the supplier for a description of any rights or warranties that Lessee may have under such contract. Lessee hereby waives any and all rights and remedies granted

Lessee by Sections 303 and 508 through 522 of Article 2A of the UCC. The waivers contained herein shall not constitute a waiver by Lessee of any of its rights or remedies against the Vendor of the Equipment.

**19.   FINANCIAL STATEMENTS AND CREDIT REPORTS.**   Lessee agrees to submit financial statements or tax returns if its financial statements are unaudited within 90 days from the end of its fiscal year and Lessee warrants to Lessor that all financial statements furnished and to be furnished have been and will be prepared in accordance with generally accepted accounting principles, are an accurate reflection of Lessee's financial condition and that there has been no material adverse change in the financial condition of Lessee or any guarantor of Lessee's obligations since the dates of preparation and submission of the financial statements submitted to Lessor. Lessee agrees to deliver to Lessor at any time or times hereafter such information or documents, including, without limitation, certified resolutions, financial statements and legal opinions, as Lessor may request. Lessee authorizes Lessor and any affiliate to obtain credit bureau reports, and make other credit inquiries that Lessor determines are necessary. Upon written request, Lessor will inform Lessee whether Lessor has requested a consumer credit report and the name and address of any consumer credit reporting agency that furnished a report. Lessee acknowledges that without further notice Lessor may use or request additional credit bureau reports to update Lessor's information so long as Lessee's obligations to Lessor under any Lease are outstanding.

**20.   CHOICE OF LAW.**   This Agreement and each Lease shall be deemed to have been made in New York and, except for local filing requirements and laws relating to conflict of laws, shall be governed by and construed in accordance with the laws of the State of New York. Lessee hereby consents to and agrees that personal jurisdiction over Lessee and subject matter jurisdiction over the Equipment shall be with the state or federal courts in New York with respect to any provision of this Agreement and/or any Lease hereunder. Lessee agrees that service of process in any action or proceeding may be duly effected upon Lessee by mailing such process via certified mail, return receipt requested. LESSEE AND LESSOR EACH WAIVES ITS RIGHT TO A TRIAL BY JURY.

**21.   ENTIRE AGREEMENT, NON-WAIVER AND SEVERABILITY.**   This Agreement and each Lease contain the entire agreement and understanding between Lessee and Lessor relating to the subject matter of each Lease. No agreements or understandings shall be binding on the parties hereto unless set forth in writing and signed by the parties. All obligations of the Lessee, if more than one, shall be joint and several. Any provision of this Agreement or any Lease hereunder which for any reason may be held unenforceable in any one jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such unenforceability without invalidating the remaining provisions of this Agreement or any Lease hereunder, and any such unenforceability in any one jurisdiction shall not render such provision unenforceable in any other jurisdiction. Any signature, execution and delivery of any document or instrument may be satisfied, in Lessor's sole discretion and to the extent permitted by the UCC, by authentication of such document or instrument as a record within the meaning of Article 9 of the UCC, including the acceptance of and reliance upon facsimile and other electronically transmitted documents and signatures.

INTENTIONALLY LEFT BLANK

SIGNATURE PAGE TO FOLLOW

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed by their authorized representatives as of the date first above written.

LESSEE:  Laser Photonics, LLC
         a Florida limited liability company

         By: Fonon Technology International, Inc.
             Its Sole Member

By:_____
         Demitri Nikitin, Its President

Print Name:  Demitri Nikitin

Title:  President

Date:  03/13/02

SG EQUIPMENT FINANCE USA CORP

By:_____

Print Name:  NORMA A. TROTH

Title:  VICE PRESIDENT

Date:  3/18/09



**MASTER LEASE SCHEDULE**

This Master Lease Schedule No. 40003439 ("Lease") is by and between **SG Equipment Finance USA Corp** ("Lessor") and Laser Photonics, LLC ("Lessee") and incorporates the terms and conditions of that certain Master Lease Agreement dated as of March 6, 2009 between Lessor and Lessee ("Master Lease"). Lessor hereby leases to Lessee and Lessee hereby leases from Lessor the following described items of Equipment, Licensed Materials, Maintenance and/or Project Costs (collectively, the "**Equipment**") for the Lease Term and on terms and conditions set forth herein. The Lease shall become effective as against Lessor upon Lessor's execution hereof.

1. EQUIPMENT DESCRIPTION: One (1) New Titan FLS 48 Fiber Laser Cutting System with all attachments

2. EQUIPMENT LOCATION: 400 Rinehard Road, Lake Mary, FL 32746

3. BILLING ADDRESS (if other than Equipment Location):

4. LEASE TERM: The Lease shall commence on the day that Lessee executes a Delivery and Acceptance Certificate with respect to the Equipment ("**Commencement Date**"). The Base Lease Term of the Lease shall be for the term indicated below and shall commence on the first day of the calendar month following the Commencement Date ("**Base Term Commencement Date**").

Base Lease Term: 60 months.

5. LEASE PAYMENTS:

(a) Base Term Rent consists of the following monthly payments:

| Number | Amount | Taxes | Total |
|--------|--------|-------|-------|
| 60 | $11,875.35 | $831.27 | $12,706.62 |

The first installment of Base Term Rent shall be due and payable upon the date specified in Lessor's invoice therefor, with the remaining Base Term Rent payments due monthly on the same day of each subsequent month until paid in full.

(b) Interim Rent is due and payable in full on the date specified in Lessor's invoice(s) therefor and shall be computed by dividing one payment of Base Term Rent by thirty (30) and multiplying the result by the number of days from and including the Commencement Date to the day preceding the Base Term Commencement Date. Interim Rent is due and payable as invoiced by Lessor.

(c) On or before the Commencement Date, Lessee shall pay Lessor an amount equal to $25,413.24 ("**Advance Payment**"). The Advance Payment shall be applied to Lessee's first Base Term Rent Payment, with any balance to be applied to the subsequent Base Term Rent payments in the inverse order of their accrual.

6. LEASE END OPTIONS: Provided no Event of Default shall have occurred and remain uncured, Lessee may upon the expiration of the Base Lease Term exercise any one of the following options with respect to not less than all items of Equipment and Licensed Materials comprising the Equipment being leased hereunder, (i) return the Equipment to Lessor, or (ii) purchase the Equipment for a cash price equal to $101.00, plus any and all applicable taxes ("**Cash Price**"). If Lessee elects to purchase the Equipment and upon receipt by Lessor of the Cash Price and all other sums due hereunder, Lessor shall: (i) convey title to the Equipment to Lessee free of liens and encumbrances created by Lessor, but otherwise on an AS-IS, WHERE-IS basis and without representation or warranty; (ii) and permit Lessee to continue to use the Licensed Materials in accordance with the applicable License Agreement.

7. MARKET RATE: The Lease Payments set forth in Section 5 hereof are based upon today's Market Rate. ("**Market Rate**"). Lessor reserves the right to adjust the Lease Payments to reflect changes in the Market Rate environment at any time prior to the Commencement Date of the Lease. Lessor will provide Lessee with a written notice of any adjustment in the Lease Payment Amount.

8. ADDITIONAL PROVISIONS: (None)

3/11/2009

| LESSEE: Laser Photonics, LLC<br>a Florida limited liability company<br><br>By: Fonon Technology International, Inc.<br>Its Sole Member | SG EQUIPMENT FINANCE USA CORP. |
|---|---|
| By: _____<br>Demitri Nikitin, its President<br><br>Print Name: _Demitri Nikitin_<br><br>Title: _President_<br><br>Date: _03/13/09_ | By: _____<br><br>Print Name: **NORMA A. TROTH**<br><br>Title: **VICE PRESIDENT**<br><br>Date: _03 - 18 - 09._ |

| (To Be Completed By Lessor When Known) | | |
|---|---|---|
| Lease #: 40003439 | Commencement Date: _3/18/09_ | Base Term Commencement Date: _3/18/09_ |

3/11/2009

EXHIBIT B

# SG ⌐ Equipment Finance

# PERSONAL GUARANTY

THIS PERSONAL GUARANTY, dated as of March 6, 2009 ("Guaranty"), is made by the undersigned individuals, each having the Social Security Number and personal residence set forth under his signature (each a "Guarantor"). In order to induce SG Equipment Finance USA Corp. ("SG Equipment Finance") to from time to time enter into or extend certain financial accommodations, or forebear from exercising rights and remedies against Laser Photonics, LLC ("Customer"), Guarantors guarantee to SG Equipment Finance USA Corp. the payment and performance of the Obligations, as defined below. Guarantors acknowledge that SG Equipment Finance USA Corp. is relying upon this Guaranty in providing financial accommodations to Customer. If more than one person executes this Guaranty, the liability of each such Guarantor hereunder shall be joint and several.

Section 1. Guaranty of Payment and Performance. Guarantors guarantee to SG Equipment Finance USA Corp. the prompt payment and/or performance of all indebtedness, obligations and liabilities of Customer at any time owing to SG Equipment Finance USA Corp., whether now existing or hereafter arising, direct or indirect, matured or unmatured, primary or secondary, certain or contingent, or acquired by or otherwise created in favor of SG Equipment Finance USA Corp., including without limitation any and all rent, loan, purchase or other installment payments, principal balances, taxes, indemnities, liquidated damages, accelerated amounts, return deficiency charges, casualty value payments, all interest, late charges and fees, attorneys' fees or enforcement and other costs, which may at any time be payable to SG Equipment Finance USA Corp., together with all claims for damages arising from or in connection with the failure to punctually and completely pay or perform such obligations, whether or not such obligations are from time to time reduced or extinguished and thereafter increased or incurred (collectively the "Obligations"). This Guaranty is a guaranty of payment and performance, and not a guaranty of collection, and Guarantors hereby undertake and agree that if Customer does not or is unable to punctually and completely pay or perform any Obligations for any reason, Guarantors shall (i) punctually pay any such Obligations requiring the payment of money which Customer fails to pay promptly, as and when due, in each case, as an Obligation for payment due directly from Guarantors to SG Equipment Finance USA Corp. and without any abatement, reduction, setoff, defense, counterclaim or recoupment, and (ii) punctually perform any and all Obligations not requiring the payment of money for the benefit of SG Equipment Finance USA Corp., as an Obligation for performance due directly from Guarantors to SG Equipment Finance USA Corp.. Guarantors shall be deemed to be primarily liable for each Obligation and not merely as a surety thereof. This Guaranty is a continuing one and will be effective and binding upon Guarantors regardless of how long before or after the date hereof any Obligation may have arisen or will arise. The obligations of Guarantors hereunder shall be absolute and unconditional, irrespective of any circumstances which might constitute a legal or equitable defense or discharge of his or her obligations hereunder or which otherwise limit enforceability against the Guarantors by SG Equipment Finance USA Corp..

Section 2. Representations, Warranties and Covenants.

2.1 Guarantors represent and warrant to SG Equipment Finance USA Corp., knowing that SG Equipment Finance USA Corp. is relying thereon, as follows:

(a) Guarantors are not minors and have full power and authority to enter into and perform their obligations under this Guaranty.

(b) The execution, delivery, and performance by Guarantors of this Guaranty do not and will not contravene any law or governmental rule, regulation or order applicable to Guarantors, and do not and will not contravene any provision of, or constitute a default under, any indenture, mortgage, contract or other instrument to which Guarantors are a party or by which they are bound. This Guaranty will constitute the legal, valid and binding agreement of Guarantors, enforceable in accordance with its terms.

(c) There are no actions, suits or proceedings pending or, to the knowledge of Guarantors, threatened against or affecting Guarantors in any court or before any governmental commission, board or authority

which, if adversely determined, will have a material adverse effect on the ability of Guarantors to perform his or her obligations under this Guaranty.

(d) The balance sheet and statement of income of Guarantors heretofore delivered to SG Equipment Finance USA Corp. have been prepared in accordance with generally accepted accounting principles and fairly present the financial position of Guarantors on and as of the date thereof and the results of its operations for the period or periods covered thereby. Since the date of such balance sheet, there has been no material adverse change in the financial condition of Guarantors.

(e) As of the date hereof, and after giving effect to this Guaranty and the contingent obligations contained herein, Guarantors are solvent and have assets which, when fairly valued, exceed its liabilities. The performance of the obligations of Guarantors hereunder will not cause Guarantors to exceed its ability to pay their debts as they mature, and this Guaranty is made without any intent to hinder, delay or defraud either present or future creditors, purchasers or other interested persons.

2.2 Commencing on the date hereof and until all of the Obligations are satisfied in full, Guarantors shall furnish to SG Equipment Finance USA Corp. such information as SG Equipment Finance USA Corp. may reasonably request with respect to the financial or business condition of Guarantor. Each Guarantor hereby authorizes SG Equipment Finance USA Corp., its agents and/or assigns to obtain business as well as personal information regarding Guarantor's credit history, via banks, trade references, credit reporting companies and any other extenders of credit for the purpose of reviewing Guarantor's credit worthiness, taking collection action on the Obligations, and for any other purpose associated with the Obligations and/or hereunder as SG Equipment Finance USA Corp. may be deem necessary from time to time.

Section 3. Waiver of Precondition, Suretyship Defenses. Guarantors hereby waive against SG Equipment Finance USA Corp. as a precondition for payment hereunder each of the following: any demand for payment, filing of claims with any court, and proceedings to enforce any provisions of the Obligations or this Guaranty, any right to require a proceeding first against the Customer or any party whatsoever or to exhaust any security for the Obligations, and all protests, presentment, notice (including, without limitation, notice of acceptance of this Guaranty by SG Equipment Finance USA Corp.) or demand whatsoever. Guarantors hereby covenant that by their agreement under this Guaranty they shall not be discharged from their obligations hereunder or with respect to the Obligations except by payment in full of all amounts due and to become due with respect to the Obligations and this Guaranty and performance and discharge of all the Obligations, and only to the extent of any such payment, performance and discharge. Without limiting the generality of the foregoing, the obligations of Guarantors hereunder and SG Equipment Finance USA Corp.'s rights to enforce same shall not be in any way affected by (i) any insolvency, bankruptcy, liquidation, reorganization, dissolution, winding up or other proceeding involving or affecting Customer, Guarantors or others; (ii) any change in the ownership of Customer; and (iii) any failure on the part of any other party whether or not without fault on its part to perform or comply with any of the terms of the Obligations or this Guaranty or any other instrument. Guarantors hereby waive any defenses which Guarantors may have or assert against the enforcement of this Guaranty or any obligation based upon suretyship principles or any impairment of collateral.

Section 4. Relation with Customer, Release of Collateral. SG Equipment Finance USA Corp. may, without notice to Guarantor, deal with the Customer in the same manner and as freely as if this Guaranty did not exist and shall be entitled among other things, without loss of right hereunder, to grant Customer such extensions of time to perform any act or acts as may seem advisable to SG Equipment Finance USA Corp. at any time and from time to time without terminating, affecting or impairing the validity of Guarantor's obligations hereunder. No compromise, alteration, amendment, modification, extensions, renewal, release of collateral, failure to acquire or maintain a lien upon collateral or other change of or waiver, consent or any action or delay or admission or failure to act in respect of any liability or obligation under or in respect of the Obligations shall in any way alter or affect the obligations of Guarantor hereunder.

3/11/2009

Section 5. Debt Subordination. All debts and liabilities, present and future of the Customer to the Guarantors ("Subordinated Debt") are hereby subordinated to the payment and performance of the Obligations, and all monies received by the Guarantors or their representative, successors or assigns thereon, shall be received as trustee for SG Equipment Finance USA Corp. and shall be paid over to SG Equipment Finance USA Corp., and the Guarantors further agree, upon any liquidation or distribution of the assets of the Customer, to assign to SG Equipment Finance USA Corp. upon its request all claims on account of the Subordinated Debt and all security therefore, to the end that SG Equipment Finance USA Corp. shall receive all dividends and payments on such Subordinated Debt until payment and performance in full of all the Obligations has occurred. This Guaranty shall constitute an assignment of the Subordinated Debt in the event the Guarantors shall fail or refuse to execute and deliver such other or further assignment of such claims and security as SG Equipment Finance USA Corp. may request. Guarantors shall not demand or accept any payment of, or otherwise cancel, set-off or otherwise discharge any part of, the Subordinated Debt without the prior written consent of SG Equipment Finance USA Corp., provided, however, that for so long as there is no default hereunder or in connection with the Obligations or the Subordinated Debt, Guarantors may receive and Customer may pay (but not prepay, whether or not permitted or contemplated by the terms of the Subordinated Debt) principal and/or interest or other scheduled installment payments of Subordinated Debt from Customer. Upon the request of SG Equipment Finance USA Corp., Guarantors shall deliver to SG Equipment Finance USA Corp. a certified statement of the outstanding Subordinated Debt, specifying in detail the time at which permitted payments of Subordinated Debt were made, if any, and such other information as SG Equipment Finance USA Corp. may request.

Section 6. Waiver of Subrogation. Guarantors hereby irrevocably waive any and all rights they may have to enforce any of the SG Equipment Finance USA Corp.'s rights or remedies or participate in any security now or hereafter held, and any and all such other rights of subrogation, reimbursement, contribution or indemnification against the Customer, or any other person having any manner of liability for Customer's obligations to SG Equipment Finance USA Corp., whether or not arising hereunder, by agreement, at law or in equity.

Section 7. Events of Default. Each of the following events shall constitute an Event of Default under this Guaranty: (i) if there exists any event or condition which, with notice and/or the passage of time, would constitute a default under any document, agreement or instrument evidencing an Obligation (including any default relating to Guarantor or this Guaranty); (ii) Guarantors fail to perform or observe any covenant, term or condition or breaches any representation or warranty contained in this Guaranty and such failure shall continue unremedied for a period of fifteen days after written notice from SG Equipment Finance USA Corp. to Guarantors stating the failure; or (iii) there is a liquidation, bankruptcy, assignment for the benefit of creditors or similar proceeding affecting the status, existence, assets or obligations of Customer or any Guarantor or other party liable to SG Equipment Finance USA Corp. in respect of the Obligations, (each of the foregoing being hereinafter referred to as a "Default"), then the Obligations of Customer shall, at the sole option of SG Equipment Finance USA Corp., be deemed to be accelerated and become immediately due and payable by Guarantors for all purposes of this Guaranty, and Guarantors shall (Y) immediately pay directly to SG Equipment Finance USA Corp. all such Obligations for the payment of money owing to SG Equipment Finance USA Corp. by reason of acceleration or otherwise (including without limitation, any rent, liquidated damages, principal or interest payments or balances, fees, other installments or any other accrued or unaccrued amounts with respect to such Obligations), irrespective of whether a Default exists relating to Customer, and notwithstanding any stay, injunction or other prohibition preventing acceleration of any Obligations against Customer, and (Z) promptly perform all other Obligations. Guarantors shall be liable, as principal obligors and not as a surety or guarantors only, for all attorneys' fees and other costs and expenses incurred by SG Equipment Finance USA Corp. in connection with SG Equipment Finance USA Corp.'s enforcement of this Guaranty, together with interest on all amounts recoverable under this Guaranty, compounded monthly in arrears, from the time such amounts become due and payable until the date of payment at the lesser of SG Equipment Finance USA Corp.'s then current late charge rate of interest or the highest rate permitted by applicable law. If SG Equipment Finance USA Corp. is required to return any payment made to SG Equipment Finance USA Corp. by or on behalf of Customer, whether as a result of Customer's bankruptcy, reorganization or otherwise, Guarantors acknowledge that this Guaranty covers all such amounts, notwithstanding that the original of this Guaranty may have been returned to Guarantors and/or otherwise canceled. No remedy provided for herein is intended to be exclusive but each shall be cumulative and in addition to any other remedy referred to above or otherwise available at law or in equity.

Section 8. Miscellaneous.

8.1 This Guaranty is in addition to and not exclusive of the guaranty of any other guarantor and of any and all prior guarantees by and of the Guarantors of the obligations of the Customer to SG Equipment Finance USA Corp.. GUARANTORS WAIVE ALL RIGHT TO TRIAL BY JURY IN ANY LITIGATION RELATING TO THIS GUARANTY OR THE TRANSACTIONS CONTEMPLATED HEREBY.

8.2 Guarantors hereby irrevocably submit itself to jurisdiction in the Courts of the State of New York and to jurisdiction in the United States District Court for the Southern District of New York with respect to any matter, suit or proceeding arising out of this Guaranty or the transactions contemplated hereby. Guarantors agree that service of process may be duly made upon it by registered or certified mail (return receipt requested) at the address of Guarantors set forth herein or at such other address as Guarantors shall from time to time designate by notice to SG Equipment Finance USA Corp. similarly given.

8.3 This Guaranty shall, with the exception of laws relating to choice of law, be governed by and construed in accordance with the laws of the State of New York, without regard to the principles regarding the choice of law. This Agreement shall be binding upon Guarantors and their successors and assigns. SG Equipment Finance USA Corp. may, at any time and without the consent of, or notice to, Guarantors, assign all or any portion of its rights hereunder to any other party to which all or any portion of the Obligations are transferred, assigned or negotiated (an "Assignee"). Guarantors shall promptly execute and deliver to SG Equipment Finance USA Corp. or its Assignee such further and additional documents, instruments and assurances as SG Equipment Finance USA Corp. deems necessary in order to acknowledge and confirm, for the benefit of SG Equipment Finance USA Corp. or its Assignee, all of the terms and conditions of all or any part of the Obligations or this Guaranty and SG Equipment Finance USA Corp.'s or Assignee's rights with respect thereto.

IN WITNESS WHEREOF, Guarantors has caused this Guaranty to be duly executed and delivered as of the date set forth above.

GUARANTOR: Demitri Nikitin

SIGNATURE: [signature]

PRINT NAME: Demitri Nikitin

HOME ADDRESS: 3217 Vattika PL
Longwood FL 32779

SOCIAL SECURITY #: 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

STATE OR COMMONWEALTH OF: Florida :
: ss.
COUNTY OF: Seminole :

On this 13 day of March, 2009, before me, a notary public, [handwritten name] (insert name of guarantor), as an individual, personally appeared and acknowledged himself/herself to be such person, and that he/she as an individual, executed the foregoing Personal Guaranty for the purposes therein contained by signing his or her name thereto.

IN WITNESS WHEREOF, I have hereunto set my hand and official seal.

[signature]

EDGARDO RODRIGUEZ NOTARY PUBLIC
MY COMMISSION # DD803378
EXPIRES: July 06, 2012
1-800-3-NOTARY FL Notary Discount Assoc. Co.

# EXHIBIT C

# THE TSANG LAW FIRM, P.C.

14 Wall Street, 22nd Floor
New York, New York 10005
Telephone: (212) 227-2246
Facsimile: (212) 227-2265
Email: mtsang@tsanglawfirm.com

June 17, 2009

**VIA FEDERAL EXPRESS**

Mr. Demitri Nikitin
3217 Yattika Pl.
Longwood, FL 32779

Re:  **SG Equipment Finance USA Corp.**

Dear Mr. Nikitin:

This office has been retained to represent SG Equipment Finance USA Corp. ("SGEF") with respect to your Personal Guaranty of the obligations owing to SGEF by Laser Photonics, LLC ("Laser Photonics") dated March 6, 2009 (the "Nikitin Guaranty").

As you know, Laser Photonics has defaulted under that certain Master Lease Agreement dated March 6, 2009 (the "Lease") having, among other things, made an assignment for the benefit of its creditors. As a result of such default, and in accordance with the terms of the Lease, SGEF has accelerated the obligations under the Lease and declared the entire balance thereunder to be immediately due and payable, plus accruing interest, costs, expenses, attorney's fees, and all other amounts owing to SGEF under the Lease.

Demand is hereby made that by no later than June 26, 2009, you deliver to this office, to the attention of the undersigned, a check for the total accelerated amount due under the Lease pursuant to your obligations under the Nikitin Guaranty. The check should be made payable to SG Equipment Finance USA Corp. Please contact the undersigned for the exact amount of the indebtedness as of the date of your payment.

In the event payment in full is not received by June 26, 2009, SGEF shall in its discretion, exercise any and all rights and remedies under the Lease, the Nikitin Guaranty, related documents, and/or applicable law, including, but not limited to, the commencement of an action against you to, among other things, recover all amounts due under the Lease and Nikitin Guaranty.

Mr. Demitri Nikitin
June 17, 2009
Page 2

     SGEF reserves all rights and remedies under the Lease and Nikitin Guaranty, related documents and applicable law, and any elections or enforcement of its rights under the Lease and Nikitin Guaranty herein does not in any way limit any other rights or remedies of SGEF thereunder or constitute a waiver thereof, all of which rights and remedies are hereby expressly preserved.

     Please guide yourself accordingly.

          Very truly yours,

          THE TSANG LAW FIRM, P.C.

By: _____
          Michael Tsang, Esq.

cc:    Mr. Juergen Jonczyk, SG Equipment Finance USA Corp.
       Mr. Steven Santagato, SG Equipment Finance USA Corp.

# EXHIBIT D

 **SG** ⌐ Equipment Finance

# GUARANTY

THIS GUARANTY, dated as of March 6, 2009 ("Guaranty"), is made by Fonon Technology International, Inc., an organization having its principal place of business at 400 Rinehart Road, Lake Mary, FL 32746 ("Guarantor").

In order to induce SG Equipment Finance USA Corp ("SGEF") from time to time to enter into or extend certain financial accommodations from time to time with, or forebear from exercising rights and remedies against, Laser Photonics, LLC ("Customer"), Guarantor guarantees to SGEF the payment and performance of the Obligations, as defined below. Guarantor acknowledges that SGEF is relying upon this Guaranty in providing financial accommodations to Customer. If more than one entity executes this Guaranty, the liability of each such Guarantor hereunder shall be joint and several.

Section 1. Guaranty of Payment and Performance. Guarantor guarantees to SGEF the prompt payment and/or performance of all indebtedness, obligations and liabilities of Customer at any time owing to SGEF, whether direct or indirect, matured or unmatured, primary or secondary, certain or contingent, or acquired by or otherwise created in favor of SGEF, including without limitation any and all rent, loan, purchase or other installment payments, principal balances, taxes, indemnities, liquidated damages, accelerated amounts, return deficiency charges, casualty value payments, all interest, late charges and fees, attorneys' fees or enforcement and other costs, which may at any time be payable to SGEF, together with all claims for damages arising from or in connection with the failure to punctually and completely pay or perform such obligations, whether or not such obligations are from time to time reduced or extinguished and thereafter increased or incurred (collectively the "Obligations"). This Guaranty is a guaranty of payment and performance, and not a guaranty of collection, and Guarantor hereby undertakes and agrees that if Customer does not or is unable to punctually and completely pay or perform any Obligations for any reason, Guarantor shall (i) punctually pay any such Obligations requiring the payment of money which Customer fails to pay promptly, as and when due, in each case, as an Obligation for payment due directly from Guarantor to SGEF and without any abatement, reduction, setoff, defense, counterclaim or recoupment, and (ii) punctually perform any and all Obligations not requiring the payment of money for the benefit of SGEF, as an Obligation for performance due directly from Guarantor to SGEF. Guarantor shall be deemed to be primarily liable for each Obligation and not merely as a surety thereof. This Guaranty is a continuing one and will be effective and binding upon Guarantor regardless of how long before or after the date hereof any Obligation may have arisen or will arise. The obligations of Guarantor hereunder shall be absolute and unconditional, irrespective of any circumstances which might constitute a legal or equitable defense or discharge of his or her obligations hereunder or which otherwise limit enforceability against the Guarantor by SGEF.

Section 2. Representations, Warranties and Covenants.
2.1 Guarantor represents and warrants to SGEF, knowing that SGEF is relying thereon, as follows:

(a) Guarantor is an entity duly organized, validly existing and in good standing under the laws of the jurisdiction of its organization and has full power and authority to enter into and perform its obligations under this Guaranty.

(b) The execution, delivery, and performance by Guarantor of this Guaranty have been duly authorized by all necessary action on the part of Guarantor, are not inconsistent with its organizational documents, do not and will not contravene any law or governmental rule, regulation or order applicable to Guarantor, and do not and will not contravene any provision of, or constitute a default under, any indenture, mortgage, contract or other instrument to which Guarantor is a party or by which it is bound. This Guaranty will constitute the legal, valid and binding agreement of Guarantor, enforceable in accordance with its terms.

(c) There are no actions, suits or proceedings pending or, to the knowledge of Guarantor, threatened against or affecting Guarantor in any court or before any governmental commission, board or authority which, if adversely determined, will have a material adverse effect on the ability of Guarantor to perform its obligations under this Guaranty.

(d) The balance sheet and statement of income of Guarantor heretofore delivered to SGEF have been prepared in accordance with

generally accepted accounting principles and fairly present the financial position of Guarantor on and as of the date thereof and the results of its operations for the period or periods covered thereby. Since the date of such balance sheet, there has been no material adverse change in the financial condition of Guarantor.

(e) As of the date hereof, and after giving effect to this Guaranty and the contingent obligations contained herein, Guarantor is solvent and has assets which, when fairly valued, exceed its liabilities. The performance of the obligations of Guarantor hereunder will not cause Guarantor to exceed its ability to pay its debts as they mature, and this Guaranty is made without any intent to hinder, delay or defraud either present or future creditors, purchasers or other interested persons.

2.2 Commencing on the date hereof and until all of the Obligations are satisfied in full, Guarantor shall furnish to SGEF: (i) within 120 days after the close of each fiscal year of Guarantor occurring after the date hereof, an audited balance sheet of Guarantor at and as of the end of such fiscal year, together with an audited statement of income of Guarantor for such fiscal year, all prepared in accordance with generally accepted accounting principles consistently applied, and (ii) from time to time, such other information as SGEF may reasonably request with respect to the financial or business condition of Guarantor. Guarantor hereby authorizes SGEF, its agents and/or assigns to obtain business information regarding Guarantor's credit history, via banks, trade references, credit reporting companies and any other extenders of credit for the purpose of reviewing credit worthiness, taking collection action on the Obligations, and for any other purpose associated with the Obligations and/or hereunder as SGEF may be deem necessary from time to time.

Section 3. Waiver of Precondition, Suretyship Defenses. Guarantor hereby waives against SGEF as a precondition for payment hereunder each of the following: any demand for payment, filing of claims with any court, and proceedings to enforce any provisions of the Obligations or this Guaranty, any right to require a proceeding first against the Customer or any party whatsoever or to exhaust any security for the Obligations, and all protests, presentment, notice (including, without limitation, notice of acceptance of this Guaranty by SGEF) or demand whatsoever. Guarantor hereby covenants that by its agreement under this Guaranty it shall not be discharged from its obligations hereunder or with respect to the Obligations except by payment in full of all amounts due and to become due with respect to the Obligations and this Guaranty and performance and discharge of all the Obligations, and only to the extent of any such payment, performance and discharge. Without limiting the generality of the foregoing, the obligations of Guarantor hereunder and SGEF's rights to enforce same shall not be in any way affected by (i) any insolvency, bankruptcy, liquidation, reorganization, dissolution, winding up or other proceeding involving or affecting Customer, Guarantor or others; (ii) any change in the ownership of Customer; and (iii) any failure on the part of any other party whether or not without fault on its part to perform or comply with any of the terms of the Obligations or this Guaranty or any other instrument. Guarantor hereby waives any defenses which Guarantor may have or assert against the enforcement of this Guaranty or any obligation based upon suretyship principles or any impairment of collateral.

Section 4. Relation with Customer, Release of Collateral. SGEF may, without notice to Guarantor, deal with the Customer in the same manner and as freely as if this Guaranty did not exist and shall be entitled among other things, without loss of right hereunder, to grant Customer such extensions of time to perform any act or acts as may seem advisable to SGEF at any time and from time to time without terminating, affecting or impairing the validity of Guarantor's obligations hereunder. No compromise, alteration, amendment, modification, extensions, renewal, release of collateral, failure to acquire or maintain a lien upon collateral or other change of or waiver, consent or any action or delay or admission or failure to act in respect of any liability or obligation under or in respect of the Obligations shall in any way alter or affect the obligations of Guarantor hereunder.

Section 5. Debt Subordination. All debts and liabilities, present and future of the Customer to the Guarantor ("Subordinated Debt") are hereby subordinated to the payment and performance of the Obligations, and all monies received by the Guarantor or its representative, successors or assigns thereon, shall be received as trustee for SGEF and shall be paid

over to SGEF, and the Guarantor further agrees, upon any liquidation or distribution of the assets of the Customer, to assign to SGEF upon its request all claims on account of the Subordinated Debt and all security therefore, to the end that SGEF shall receive all dividends and payments on such Subordinated Debt until payment and performance in full of all the Obligations has occurred. This Guaranty shall constitute an assignment of the Subordinated Debt in the event the Guarantor shall fail or refuse to execute and deliver such other or further assignment of such claims and security as SGEF may request. Guarantor shall not demand or accept any payment of, or otherwise cancel, set-off or otherwise discharge any part of, the Subordinated Debt without the prior written consent of SGEF, provided, however, that for so long as there is no default hereunder or in connection with the Obligations or the Subordinated Debt, Guarantor may receive and Customer may pay (but not prepay, whether or not permitted or contemplated by the terms of the Subordinated Debt) principal and/or interest or other scheduled installment payments of Subordinated Debt from Customer. Upon the request of SGEF, Guarantor shall deliver to SGEF a certified statement of the outstanding Subordinated Debt, specifying in detail the time at which permitted payments of Subordinated Debt were made, if any, and such other information as SGEF may request.

Section 6. Waiver of Subrogation. Guarantor hereby irrevocably waives any and all rights it may have to enforce any of the SGEF's rights or remedies or participate in any security now or hereafter held, and any and all such other rights of subrogation, reimbursement, contribution or indemnification against the Customer, or any other person having any manner of liability for Customer's obligations to SGEF, whether or not arising hereunder, by agreement, at law or in equity.

Section 7. Events of Default. Each of the following events shall constitute an Event of Default under this Guaranty: (i)if there exists any event or condition which, with notice and/or the passage of time, would constitute a default under any document, agreement or instrument evidencing an Obligation (including any default relating to Guarantor or this Guaranty); (ii) Guarantor fails to perform or observe any covenant, term or condition or breaches any representation or warranty contained in this Guaranty and such failure shall continue unremedied for a period of fifteen days after written notice from SGEF to Guarantor stating the failure; or (iii) there is a liquidation, bankruptcy, assignment for the benefit of creditors or similar proceeding affecting the status, existence, assets or obligations of Customer or any Guarantor or other party liable to SGEF in respect of the Obligations, (each of the foregoing being hereinafter referred to as a "Default"), then the Obligations of Customer shall, at the sole option of SGEF, be deemed to be accelerated and become immediately due and payable by Guarantor for all purposes of this Guaranty, and Guarantor shall (Y) immediately pay directly to SGEF all such Obligations for the payment of money owing to SGEF by reason of acceleration or otherwise (including without limitation, any rent, liquidated damages, principal or interest payments or balances, fees, other installments or any other accrued or unaccrued amounts with respect to such Obligations), irrespective of whether a Default exists relating to Customer, and notwithstanding any stay, injunction or other prohibition preventing acceleration of any Obligations against Customer, and (Z) promptly perform all other Obligations. Guarantor shall be liable, as principal obligor and not as a surety or guarantor only, for all attorneys' fees and other costs and expenses incurred by SGEF in connection with SGEF's enforcement of this Guaranty, together with interest on all amounts recoverable under this Guaranty, compounded monthly in arrears, from the time such amounts become due and payable until the date of payment at the lesser of SGEF's then current late charge rate of interest or the highest rate permitted by applicable law. If SGEF is required to return any payment made to SGEF by or on behalf of Customer, whether as a result of Customer's bankruptcy, reorganization or otherwise, Guarantor acknowledges that this Guaranty covers all such amounts, notwithstanding that the original of this Guaranty may have been returned to Guarantor and/or otherwise canceled. No remedy provided for herein is intended to be exclusive but each shall be cumulative and in addition to any other remedy referred to above or otherwise available at law or in equity.

Section 8. Miscellaneous.
8.1 This Guaranty is in addition to and not exclusive of the guaranty of any other guarantor and of any and all prior guarantees by and of the Guarantor of the obligations of the Customer to SGEF. Guarantor waives all right to trial by jury in any litigation relating to this Guaranty or the transactions contemplated hereby.

8.2 Guarantor hereby irrevocably submits itself to jurisdiction in the Courts of the State of New York and to jurisdiction in the United States District Court for the Southern District of New York with respect to any matter, suit or proceeding arising out of this Guaranty or the transactions contemplated hereby. Guarantor agrees that service of process may be duly made upon it by registered or certified mail (return receipt requested) at the address of Guarantor set forth herein or at such other address as Guarantor shall from time to time designate by notice to SGEF similarly given.

8.3 This Guaranty shall, with the exception of laws relating to choice of law, be governed by and construed in accordance with the laws of the State of New Jersey, without regard to the principles regarding the choice of law. This Agreement shall be binding upon Guarantor and its successors and assigns. SGEF may, at any time and without the consent of, or notice to, Guarantor, assign all or any portion of its rights hereunder to any other party to which all or any portion of the Obligations are transferred, assigned or negotiated (an "Assignee"). Guarantor shall promptly execute and deliver to SGEF or its Assignee such further and additional documents, instruments and assurances as SGEF deems necessary in order to acknowledge and confirm, for the benefit of SGEF or its Assignee, all of the terms and conditions of all or any part of the Obligations or this Guaranty and SGEF's or Assignee's rights with respect thereto.

IN WITNESS WHEREOF, the undersigned, pursuant to due corporate, limited liability company or partnership authority, as appropriate, has or have caused this Guaranty to be executed as of the date set forth above.

GUARANTOR: Fonon Technology International, Inc.

BY: _____

PRINT NAME: Demitri Nikitin

TITLE: President

GUARANTOR'S TAX ID#: 37-1512369

STATE OR COMMONWEALTH OF: Florida :
: ss.
COUNTY OF: Seminole :

On this 13 day of March, 200 9, before me, a notary public, Demitri Nikitin (insert name of person signing guaranty), as an individual, personally appeared and acknowledged himself/herself to be such person, and that he/she as an authorized representative of Guarantor, executed the foregoing Guaranty for the purposes therein contained by signing his or name thereto.

IN WITNESS WHEREOF, I have hereunto set my hand and official seal.

_____
NOTARY PUBLIC

EDGARDO RODRIGUEZ
MY COMMISSION # DD803378
EXPIRES: July 29, 2012
Bonded Thru Notary Discount Assoc. Co.

# EXHIBIT E

# THE TSANG LAW FIRM, P.C.

14 Wall Street, 22nd Floor
New York, New York 10005
Telephone: (212) 227-2246
Facsimile: (212) 227-2265
Email: mtsang@tsanglawfirm.com

June 17, 2009

**VIA FEDERAL EXPRESS**

Mr. Demitri Nikitin
President
Fonon Technology International, Inc.
400 Rinehart Road
Lake Mary, FL 32746

Re: **SG Equipment Finance USA Corp.**

Dear Mr. Nikitin:

This office has been retained to represent SG Equipment Finance USA Corp. ("SGEF")
with respect to the Guaranty by Fonon Technology International, Inc. ("Fonon") of the
obligations owing to SGEF by Laser Photonics, LLC ("Laser Photonics") dated March 6, 2009
(the "Guaranty").

As you know, Laser Photonics has defaulted under that certain Master Lease Agreement
dated March 6, 2009 (the "Lease") having, among other things, made an assignment for the
benefit of its creditors. As a result of such default, and in accordance with the terms of the Lease,
SGEF has accelerated the obligations under the Lease and declared the entire balance thereunder
to be immediately due and payable, plus accruing interest, costs, expenses, attorney's fees, and
all other amounts owing to SGEF under the Lease.

Demand is hereby made that by no later than June 26, 2009, Fonon deliver to this office,
to the attention of the undersigned, a check for the total accelerated amount due under the Lease
pursuant to Fonon's obligations under the Guaranty. The check should be made payable to SG
Equipment Finance USA Corp. Please contact the undersigned for the exact amount of the
indebtedness as of the date of your payment.

In the event payment in full is not received by June 26, 2009, SGEF shall in its discretion,
exercise any and all rights and remedies under the Lease, the Guaranty, related documents,

Mr. Demitri Nikitin, President
Fonon Technology International, Inc.
June 17, 2009
Page 2

and/or applicable law, including, but not limited to, the commencement of an action against Fonon to, among other things, recover all amounts due under the Lease and Guaranty.

SGEF reserves all rights and remedies under the Lease and Guaranty, related documents and applicable law, and any elections or enforcement of its rights under the Lease and Guaranty herein does not in any way limit any other rights or remedies of SGEF thereunder or constitute a waiver thereof, all of which rights and remedies are hereby expressly preserved.

Please guide yourself accordingly.

Very truly yours,

THE TSANG LAW FIRM, P.C.

By: _____
Michael Tsang, Esq.

cc:    Mr. Juergen Jonczyk, SG Equipment Finance USA Corp.
       Mr. Steven Santagato, SG Equipment Finance USA Corp.

Case No.    1:09-CV-7167 (LTS)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SG EQUIPMENT FINANCE USA CORP.,

Plaintiff,

-against-

DEMITRI NIKITIN a/k/a DMITRI NIKITIN a/k/a
DIMITRI NIKITIN and FONON TECHNOLOGY
INTERNATIONAL, INC.,

Defendants.

## COMPLAINT

THE TSANG LAW FIRM, P.C.
*Attorneys for SG Equipment Finance USA Corp.*

*Office and Post Office Address, Telephone*

14 WALL STREET, 22ND FLOOR
NEW YORK, N.Y. 10005
(212) 227-2246

| To | Signature (Rule 130-1.1-a) |
|---|---|
| | ......................................................... |
| | Print name beneath |
| Attorney(s) for | |

Service of a copy of the within                                    is hereby admitted.

Dated,                                    .........................................................
                                          Attorney(s) for

Please take notice
☐ NOTICE OF ENTRY
that the within is a (*certified*) true copy of a
duly entered in the office of the clerk of the within named court on
☐ NOTICE OF SETTLEMENT
that an order                                    of which the within is a true copy will be presented for
settlement to the HON.                                    one of the judges
of the within named court, at
on                                    at                                    M

Dated,                                    Yours, etc.
                                         THE TSANG LAW FIRM, P.C.
                                         *Attorneys for*
To                                       *Office and Post Office Address*
                                         14 WALL STREET, 22ND FLOOR
Attorney(s) for                          NEW YORK, N.Y. 10005